OPINION
{¶ 1} Defendant, Monte McCoy, appeals from the trial court's judgment overruling his motion for a new trial.
 {¶ 2} On November 5, 2002, Defendant and a female companion entered the Elder Beerman store at the Fairfield Commons Mall in Beavercreek. Defendant immediately applied for instant credit (a charge card) and presented store clerk Kelly Hart with a driver's license that bore the name, address, phone number and social security number of George Bancroft. Loss prevention officer Leslie Lichty witnessed the transaction on her monitor, and both Lichty and Hart witnessed Defendant forge the name of George Bancroft when he applied for the instant credit.
 {¶ 3} Based upon Bancroft's social security number, Defendant was able to obtain an instant credit voucher (temporary charge card) with a $2,000 line of credit. Defendant immediately used his new charge card to purchase some clothing his female companion had selected. In making the purchase Defendant once again forged the name of George Bancroft. This transaction was witnessed by loss prevention officer Lichty and store clerk Ruth Kisarewich. Both of Defendant's transactions were recorded on videotape by the store's surveillance cameras.
 {¶ 4} After making this purchase Defendant and the female left the store. Almost immediately, loss prevention Officer Lichty learned from the store's credit department that the information Defendant had given to obtain the charge card was fraudulent. Lichty contacted mall security and was able to obtain Defendant's license plate number which she reported to Beavercreek police. Lichty also sent an e-mail to other Elder Beerman stores in the area alerting them to the invalid charge card and a description of Defendant. Later that same day Defendant was apprehended by Dayton police after he attempted to use the charge card at an Elder Beerman store in Dayton. Dayton police turned Defendant over to Beavercreek police. The charge card was discovered in Defendant's pants pocket.
 {¶ 5} Defendant was indicted on two counts of forgery, R.C.2913.31(A)(1), one count of identity fraud, R.C. 2913.49(B)(2), and one count of possessing criminal tools, R.C. 2923.24(A). Following a jury trial, Defendant was found guilty on March 4, 2003, on all of the charges. On March 12, 2003, Defendant filed a motion for a new trial based upon newly discovered evidence, various witnesses and the police report of Beavercreek Officer Timothy Lambert. Defendant argued in his motion and at the hearing held on it as part of the sentencing proceeding, that this new evidence demonstrated that he was illegally stopped and seized by police, that Officers Lambert and Carins lied during the trial, and that the prosecutor manufactured evidence and used testimony by the officers that he knew was false.
 {¶ 6} On March 21, 2003, the trial court sentenced Defendant to prison terms totaling forty months. As part of the sentencing hearing the trial court also heard and overruled Defendant's motion for a new trial, concluding that Defendant failed to satisfy the requirements for a new trial. See: Crim.R. 33(A)(6);State v. Petro (1947), 148 Ohio St. 505. Defendant subsequently appealed his conviction and sentence, which we affirmed in Statev. McCoy (January 23, 2004), Greene App. No. 2003-CA-27,2004-Ohio-266, but Defendant did not seek review of the trial court's decision overruling his motion for a new trial.
 {¶ 7} On October 20, 2004, Defendant filed a second motion for a new trial based upon newly discovered evidence, Officer Lambert's police report. Once again Defendant argued that this new evidence demonstrated that police lacked probable cause to stop or arrest him, that Officers Lambert and Carins lied during the trial, and that the prosecutor manufactured evidence and used testimony by the officers that he knew was false. On December 17, 2004, the trial court overruled Defendant's second motion for a new trial because Defendant's claims had previously been raised and litigated, and thus they are barred by res judicata.
 {¶ 8} Defendant timely appealed to this court from the trial court's December 17, 2004 decision overruling his motion for a new trial.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "APPELLANT WAS DENIED A FAIR TRIAL GUARANTEED TO HIM UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION DUE TO MISCONDUCT BY THE PROSECUTOR AND MISCONDUCT OF THE STATE'S WITNESSES."
 SECOND ASSIGNMENT OF ERROR {¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN HE DENIED THE DEFENDANT'S MOTION FOR A NEW TRIAL ON THE GROUNDS OF NEW DISCOVERED EVIDENCE."
 {¶ 11} In these assignments of error Defendant argues that the trial court abused its discretion in denying his motion for a new trial based upon newly discovered evidence because that new evidence, Officer Lambert's police report, demonstrates that Officers Lambert and Carins lied during the trial, and that the prosecutor manufactured evidence and used testimony by the officers that he knew was false.
 {¶ 12} The decision whether to grant a motion for a new trial is within the sound discretion of the trial court, and an appellate court cannot reverse a trial court's judgment absent an abuse of discretion. State v. Schiebel (1990),55 Ohio St.3d 71; State v. Butler (April 23, 2004), Clark App. No. 2003CA26,2004-Ohio-2036. An abuse of discretion means more than a mere error of law or judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 13} The trial court denied Defendant's second motion for a new trial based upon res judicata. Res judicata promotes the principles of finality of judgments and conservation of judicial resources by preventing repeated attacks upon a final judgment.National Amusements Inc. v. Springdale (1990),53 Ohio St.3d 60. [A] "valid, final judgment rendered on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, 382. The bar also applies to any claim which "might have been litigated in a first lawsuit." Nat'l Amusement Inc. v.Springdale, supra. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating, in any proceeding except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.State v. Szefcyk, 77 Ohio St.3d 93, 1996-Ohio-337; State v.Perry (1967), 10 Ohio St.2d 175; State v. Russell (August 9, 2005), Franklin App. No. 04AP1-149, 2005-Ohio-4063.
 {¶ 14} The claims Defendant raises in support of his second motion for a new trial are the same claims he previously raised in his first motion for a new trial. The trial court rejected those claims because it concluded that Defendant had failed to satisfy the requirements to obtain a new trial based upon newly discovered evidence. Specifically, the trial court found that Defendant failed to support his claim of newly discovered evidence with the affidavits of the witnesses by whom such evidence is expected to be given, as required by Crim.R. 33(A)(6), Defendant failed to demonstrate that with reasonable diligence he could not have discovered and produced his new evidence at trial, and that in any event this new evidence did not display a strong probability that it would change the result if a new trial was granted. State v. Petro, supra.
 {¶ 15} Although Defendant subsequently appealed from his conviction and sentence, he did not appeal the trial court's judgment overruling his first motion for a new trial, which he clearly could have done. The record clearly demonstrates that Defendant was in possession of his "newly discovered evidence," Officer Lambert's police report, at the latest before the sentencing hearing took place and quite possibly before trial, i.e. during the February 13, 2003 hearing held on his ineffective assistance of counsel claim. Not only does res judicata bar re-litigation of claims that were previously raised and litigated at trial, Butler, supra, or on direct appeal, it also bars claims that could have been raised on appeal. Szefcyk, supra;Russell, supra.
 {¶ 16} The trial court's decision overruling on the merits Defendant's first motion for a new trial based upon newly discovered evidence, Officer Lambert's police report, constitutes a valid final judgment that bars Defendant's subsequent action, his second motion for a new trial which also relies upon Officer Lambert's police report as newly discovered evidence and presents the same claims that were previously raised in his first new trial motion. Grava v. Parkman Twp., supra. Furthermore, Defendant clearly could have raised on direct appeal from his conviction the trial court's judgment overruling his first motion for a new trial, but he did not do so. State v. Szefcyk, supra;State v. Russell, supra. Because the claims presented in Defendant's second new trial motion were previously raised and litigated in the trial court, and could have been raised on direct appeal from his conviction, they are barred by res judicata. One final note, to the extent that Defendant's newly discovered evidence merely impeaches or contradicts former evidence presented at the trial, it does not warrant granting a new trial. Petro, supra. The trial court did not abuse its discretion in denying Defendant's second motion for a new trial.
 {¶ 17} The assignments of error are overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. And Donovan, J., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.